IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

SANDY CARRERAS-MORALES,

Plaintiff,

v.

SILGAN CONTAINERS MANUFACTURING PUERTO RICO, LLC, OKAYA, INC., AND TALENT PARTNERS, INC.,

Defendants.

CIV. NO. 19-1828 (SCC)

**OPINION AND ORDER**

Sandy Carreras-Morales filed this lawsuit against Silgan Containers Manufacturing Puerto Rico, LLC ("Silgan"), Okaya, Inc. ("Okaya"), and Talent Partners, Inc. ("TPI"), claiming that they have violated the Age Discrimination in Employment Act ("ADEA") and Puerto Rico Law 100 by discriminating against him based on his age. Silgan and Okaya have moved for summary judgment. But before we reach those motions, we must first address how Carreras and TPI's settlement and stipulation of partial dismissal impact Silgan's and Okaya's third-party complaints.

## I. PROCEDURAL HISTORY

Carreras claims that Silgan, Okaya, and TPI have violated the ADEA and Puerto Rico law by discriminating against him based on his age. Docket No. 58. He alleges that Silgan hired TPI, which had a cooperative placement agreement with Okaya, to help it find candidates for a plant-manager position. *Id.* at 3. Communications from TPI and Okaya prove that he was passed over for the job because of his age, he says, because TPI told Okaya, and Okaya told him, that Silgan was only considering candidates less than fifty-eight years old. *Id.* at 8–9. Silgan and Okaya each filed a third-party complaint against TPI, asserting indemnity, contribution, and negligence claims. Docket Nos. 10, 28. They also asserted these claims against each other. Docket Nos. 7, 27. Moreover, TPI asserted these claims against them. Docket Nos. 42, 43. Each defendant, therefore, has asserted three claims against the other two: indemnity, contribution, and negligence.

Carreras and TPI entered into a settlement agreement. TPI paid a sum to Carreras in exchange for his promise to release

it from his claims *and* Silgan's and Okaya's claims. Docket No. 92-1, pg. 2. Carreras agreed to hold TPI harmless and not collect—from any defendant—damages stemming from TPI's liability. *Id.* at 5. As part of the agreement, Carreras and TPI agreed to file a stipulation of partial dismissal, asking the Court to dismiss TPI from Carreras's amended complaint and dismiss Silgan's and Okaya's third-party complaints. *Id.* at 6. Both Silgan and Okaya have objected on the ground that, because they were not parties to it, the agreement cannot strip them of their claims against TPI. Docket Nos. 98, 100.

Silgan and Okaya have moved for summary judgment. Docket Nos. 106, 107. But because the settlement and stipulation of partial dismissal affect the claims that remain for summary judgment, we address them first.

## II. SETTLEMENT & STIPULATION OF PARTIAL DISMISSAL

The point of contention is whether Carreras and TPI may unilaterally agree to release TPI from Silgan's and Okaya's claims against it. They may agree to release TPI from Silgan's and Okaya's indemnity and contribution claims but not from

their negligence claims. We will explain why.

Under Puerto Rico law, a victim may release a joint tortfeasor from *all* liability that arises from a tortious event. *Sagardía de Jesús v. Hosp. Auxilio Mutuo*, 177 D.P.R. 484, 499 (P.R. 2009). The victim, in other words, may agree to release a joint tortfeasor from liability as to her and from liability as to the other tortfeasors in an action for indemnity or contribution. *Id.* When this happens, the victim assumes the released joint tortfeasor's liability and, thus, any liability on the part of the released tortfeasor is subtracted from the victim's recovery. *Id.* at 499–500; *see also Szendrey v. Hospicare, Inc.*, 158 D.P.R. 648, 658–59 (P.R. 2003) (stating that where the plaintiff has released a co-defendant from all liability, a court calculates the plaintiff's recovery by subtracting the released co-defendant's liability from the total amount of liability).

The settlement agreement releases TPI from all liability. *See* Docket No. 92-1. That is, Carreras agreed to release TPI from all liability arising from its amended complaint and Silgan's and Okaya's third-party complaints, *id.* at 2–3, and to

waive its right to recover from any defendant "the portion of responsibility attributable to" TPI, *id.* at 8; *see also id.* at 9 (stating that the other defendants "will not be liable to [Carreras] for any damages attributable" to TPI). This agreement is valid insofar as it releases TPI from all liability arising from Carreras's amended complaint and from Silgan's and Okaya's indemnity and contribution claims. *See Sagardía de Jesús*, 177 D.P.R. at 499–500; *Szendrey*, 158 D.P.R. at 658–59. But the agreement cannot release TPI from Silgan's and Okaya's negligence claims.

Silgan and Okaya allege that TPI has committed a separate and distinct harm against them. They allege that TPI negligently told Okaya, which then told Carreras, that Silgan would only consider candidates less than fifty-eight years old. Docket No. 10, pg. 4; Docket No. 28, pg. 5. And, they say, as a result of TPI's negligence, they have incurred legal fees defending themselves from Carreras's claims and prosecuting third-party claims against TPI. Docket No. 10, pg. 4; Docket No. 28, pg. 5. In short, they are seeking to recover

from TPI for a harm that it allegedly caused them (*i.e.*, their legal fees resulting from its allegedly false statement that Silgan has an age requirement) that is separate and distinct from the harm it allegedly caused Carreras. Though Carreras may contract away its own right to recover from TPI for harm it caused him, it may not contract away Silgan's and Okaya's rights to recover from TPI for a separate and distinct harm it caused them. *See Rio Mar Assocs., LP v. UHS of P.R., Inc.*, 522 F.3d 159, 164 (1st Cir. 2008) ("The plaintiff and [one co-defendant] cannot by contracting between themselves deny a third-party rights that the third party (here, the [other co-defendant]) enjoys under the law."). The settlement agreement, therefore, did not affect Silgan's and Okaya's negligence claims against TPI.

We turn now to Carreras and TPI's stipulation, which asks the Court to dismiss TPI from Carreras's amended complaint and dismiss Silgan's and Okaya's third-party complaints. A plaintiff may voluntarily dismiss an action under Federal Rule of Civil Procedure 41. But, at this phase in the lawsuit

and without the consent of all appearing parties, the dismissal must be "on terms that the court considers proper." FED. R. CIV. P. 41(a)(2); *see also Donahue v. Fannie Mae,* 971 F.3d 1, 3 (1st Cir. 2020) ("We do not doubt that 'an action' under Rule 41(a)(1)(A)(i) can refer to all claims a plaintiff has brought against a single defendant in a multi-defendant suit rather than only all claims against all defendants in such a suit."). Carreras, however, is not the plaintiff in Silgan's and Okaya's third-party complaints—they are. We, therefore, limit our Rule 41 inquiry to Carreras's request to dismiss TPI from his amended complaint.

The Court "should grant a motion for voluntary dismissal" as long as "no other party will be prejudiced." *Cason v. P.R. Elec. Power Auth.*, 770 F.3d 971, 976 (1st Cir. 2014) (first citing *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 161 (1st Cir. 2000); and then quoting *P.R. Mar. Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir. 1981)). Prejudice requires more than "facing the mere prospect of a second lawsuit." *Id.* (citing *Doe*, 216 F.3d at 161). Carreras and TPI have stipulated to dismiss

Carreras's claims against it, Docket No. 82, pgs. 3–4, and we see no "plain legal prejudice," *Cason*, 770 F.3d at 976, that will occur if we do so. For both parties have consented to the dismissal, there is a clear explanation for it (*i.e.*, their settlement agreement), there has been no excessive delay or lack of due diligence on Carreras's part, and TPI has not filed a motion for summary judgment against Carreras or engaged in extensive trial preparation. *See Doe*, 216 F.3d at 160 (providing that, in deciding a Rule 41(a)(2) motion, "courts typically look to 'the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant.'" (Quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969))). We, therefore, grant Carreras's request to dismiss its claims against TPI with prejudice.

We turn now to Carreras and TPI's request to dismiss Silgan's and Okaya's third-party complaints. As we noted,

Rule 41 is not the proper vehicle to dismiss them because it requires the plaintiffs to have requested the dismissal. And the plaintiffs in those complaints (Silgan and Okaya) have not. We nonetheless dismiss some of the claims in them for lack of subject-matter jurisdiction.

"[A]n actual controversy must exist at all stages of the proceedings." *Matt v. HSBC Bank U.S.A., N.A.*, 783 F.3d 638, 372 (1st Cir. 2015). Where the "parties lack a legally cognizable interest in the outcome" such that the court cannot provide relief to the potentially prevailing party, the case or claim becomes moot. *Id.* (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (per curiam)). And when that happens, the case or claim must be dismissed. *Overseas Mil. Sales Corp. v. Giralt-Armada*, 503 F.3d 12, 17 (1st Cir. 2007). Silgan's and Okaya's claims for indemnity and contribution against TPI are now moot because we cannot provide them relief. Carreras agreed to "hold TPI harmless" and waive his ability to collect damages from TPI, Silgan, or Okaya premised on TPI's liability. Docket No. 92-1, pg. 5. In short, the effect of the

settlement agreement is that Carreras cannot recover any money from any defendant based on TPI's liability. *See Sagardía de Jesús*, 177 D.P.R. at 499–500; *Szendrey*, 158 D.P.R. at 658–59. Any liability attributable to TPI will be subtracted from Carreras's overall recovery, *see Szendrey*, 158 D.P.R. at 658–59, and, thus, TPI's liability will have already been accounted for in any damages Silgan and Okaya owe to Carreras. Because TPI's liability will have already been accounted for, their claims against it for indemnity and contribution are moot. We, therefore, dismiss them for lack of subject-matter jurisdiction.

We dismiss as well TPI's indemnity and contribution claims against Silgan and Okaya. Docket No. 42, pg. 7; Docket No. 43, pg. 8. For those claims are also moot. Because Carreras has released TPI from paying damages, we cannot provide it any relief in an indemnity or contribution action. Finally, we dismiss TPI's negligence claims[1] against Silgan and Okaya

1. TPI asserted negligence claims against Silgan and Okaya, alleging that Silgan negligently established discriminatory hiring criteria, Docket No.

because it has agreed to waive any claims arising out of the events in the amended complaint and third-party complaints. Docket No. 92-1, pg. 4 (agreeing to "release and waive [Carreras's and TPI's] claims against each other . . . and any other claims that may arise out of the events alleged in the [a]mended [c]omplaint and [t]hird[-][p]arty complaints"). Its negligence claims, therefore, are moot. But Silgan's and Okaya's negligence claims against TPI are not moot because, as we explained, the settlement agreement did not affect them. So those claims remain.

We summarize the ground that we have covered so far: Upon his request, we have dismissed Carreras's claims against TPI with prejudice. And we have dismissed Silgan's and Okaya's indemnity and contribution claims against TPI and TPI's indemnity, contribution, and negligence claims because they are moot.

---

42, pg. 6, and that Okaya negligently communicated discriminatory hiring criteria to Carreras, Docket No. 43, pg. 7. The settlement agreement appears to moot these claims. But even if it does not, we would decline to exercise supplemental jurisdiction over them. *See infra* Part IV.

## III. MOTIONS FOR SUMMARY JUDGMENT

Silgan and Okaya have moved for summary judgment on Carreras's ADEA and Law 100 claims. Docket Nos. 106, 107. Summary judgment is appropriate when the record demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Alston v. Town of Brookline*, 997 F.3d 23, 35 (1st Cir. 2021). A fact is material if it may affect the outcome of the lawsuit. *Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 50 (1st Cir. 2021). And there is a genuine dispute over it where, "the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the [fact] in favor of either party." *Id.* (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). The nonmovant—here, Carreras—nonetheless "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986) (stating that where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," the movant is "entitled to a judgment as a matter of law"). We begin by setting forth the undisputed material facts. Then we turn to whether, based on these facts, Silgan and Okaya have shown that they are entitled to judgment as a matter of law. *See Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 118 (1st Cir. 2005).

*A. UNDISPUTED MATERIAL FACTS*

Silgan is a food-packaging manufacturer that has a factory in Las Piedras, Puerto Rico. SUF Nos. 1, 3; CRSUF Nos. 1, 3.[2] When the plant-manager position became available, Silgan wanted to hire someone local because its prior managers had

2. We draw the undisputed material facts from Silgan's statement of undisputed material facts ("SUF"), Docket No. 105; Okaya's statement of undisputed material facts ("OUF"), Docket No. 108; Carreras's response to Silgan's statement of undisputed material facts ("CRSUF"), Docket No. 117; Carreras's response to Okaya's statement of undisputed material facts ("CROUF"), Docket No. 118; Carreras's statement of undisputed material facts ("CUF"), Docket No. 116; and Silgan's reply to Carreras's statement of undisputed material facts ("SRCUF"), Docket No. 125-2.

moved back to the contiguous United States after working there for only a few years. SUF No. 11; CRSUF No. 11. Silgan entered into an agreement with TPI where TPI agreed to provide it recruiting services. SUF No. 12; CRSUF No. 12. In January 2018, Silgan contacted TPI's president, Joann Cox, asking her to recruit candidates for its plant-manager position. SUF Nos. 13–14; CRSUF Nos. 13–14. TPI had a cooperative-placement agreement with Okaya where they worked together to recruit candidates. SUF No. 16; CRSUF No. 16; OUF Nos. 63, 65; CROUF Nos. 63, 65.

In late January 2018, Okaya contacted Carreras, telling him that the plant-manager position at Silgan was available and asking for his resume. SUF No. 17; CRSUF No. 17; OUF Nos. 72–74; CROUF Nos. 72–74. Okaya also provided him with a description of the job's minimum qualifications, which included, among other things, a bachelor's degree. OUF No. 75; CROUF No. 75. Carreras does not have a bachelor's

degree. OUF No. 81; CROUF No. 81.[3] During this interaction, Okaya did not mention an age requirement. SUF No. 19; CRSUF No. 19; OUF No. 78; CROUF No. 78.

In early February, TPI reached out to Carreras and provided him with more information about the plant-manager position. SUF No. 21; CRSUF No. 21; OUF No. 83; CROUF No. 83. TPI did not ask his age or when he planned to retire, nor did he disclose this information to it. SUF Nos. 22–23; CRSUF Nos. 22–23. And his resume does not contain his date of birth nor dates related to his education. SUF No. 18; CRSUF No. 18; OUF Nos. 79–80; CROUF Nos. 79–80. Silgan contacted Carreras and asked him to fill out an

3. Under our local rules, a fact that is properly supported by a record citation is deemed admitted if it is not properly controverted. D.P.R. Civ. R. 56(e). Okaya has properly supported this fact. Carreras denies it on the ground that it is immaterial because the defendants do not argue that his lack of a bachelor's degree had anything to do with the decision not to hire him. But Okaya argues that his lack of a bachelor's degree shows that he is not qualified for the position. Docket No. 107, pg. 6. This fact is material because Carreras's qualifications may affect the outcome of this lawsuit. *See Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 50 (1st Cir. 2021). Because Okaya has properly supported it and Carreras has not properly controverted it, we deem it admitted.

application, SUF No. 25; CRSUF No. 25; OUF No. 98; CROUF No. 98, which did not contain his age or date of birth, SUF No. 28; CRSUF No. 28; OUF No. 105; CROUF No. 105.

As part of its hiring process, Silgan requires all managerial candidates to complete a two-stage pre-employment test. SUF Nos. 30–31; CRSUF Nos. 30–31; OUF No. 106; CROUF No. 106. Carreras passed the first stage but received a "review"—which is not considered a passing score[4]—on the second stage. SUF Nos. 34, 38; CRSUF Nos. 34, 38; OUF No. 117; CROUF No. 117. Based on his scores, Sue Thiele, Silgan's Operations Coordinator, recommended to Bruce Whittier, Silgan's Director of Manufacturing, not to move forward with

4. Silgan and Okaya have properly supported this fact. They cite to testimony from Sue Thiele, Silgan's Operations Coordinator, where she says that an outside company administers the test and, though she does not know what the precise cut off is for a passing score, she knows that a "review" is not a passing score. Docket No. 105-8, pgs. 36–37. Carreras denies this fact on the ground that Theile does not have personal knowledge of the cut-off scores. CRSUF No. 34. But she knows that a "review" is not a passing score, and that is the fact that Silgan and Okaya have put forth. Her testimony, therefore, properly supports the fact. Because Carreras has not properly controverted it, we deem it admitted.

Carreras, and Whittier agreed. SUF Nos. 39–40; CRSUF Nos. 39–40. Thiele also sent an email to Tami Potkay, Silgan's Regional Human Resources Manager, where she informed her that she did not recommend moving forward with Carreras and provided his test scores (16% on "Mech. Principles" and 60% on "PET"). SUF No. 46; CRSUF No. 46; OUF No. 118; CROUF No. 118. Potkay then emailed Cox at TPI to inform her that Silgan had declined Carreras.[5] SUF No. 48; CRSUF No. 48. Okaya followed up with TPI about Carreras's application, and TPI informed it that Silgan had declined to move forward with him because of his test scores. OUF Nos. 126–27; CROUF Nos. 126–27.

A few months later, on April 20th, TPI reached out to Okaya to inform it that the plant-manager position had reopened, and that Silgan still wanted to hire someone local. OUF Nos. 130–31; CROUF Nos. 130–31. In her email, Cox stated, "Silgan has communicated in the past that they prefer

5. We deem this fact admitted because it is properly supported but not properly controverted.

candidates who are not close to retirement. . . . If it appears they are most likely more than 55–58 (plus or minus a couple of years) your time is likely better spent elsewhere." OUF No. 136; CROUF No. 136; CUF No. 33; SRCUF No. 33. She sent another email that day stating, "We're not supposed to discriminate on age—but reality is—they're not going to hire any candidate who is 58+ years old." OUF No. 138; CROUF No. 138; CUF No. 36; SRCUF No. 36. Okaya did not help draft these emails. OUF No. 140; CROUF No. 140. Cox later said that she made these statements based on her experience working with Silgan, its company culture, and her conversations with its human resources representatives. CUF Nos. 51–54; SRCUF Nos. 51–54. Cox also said that age was not a definitive requirement. CUF No. 70; SRCUF No. 70.

On April 26th, Okaya asked Carreras for his age and date of birth because, it said, its client was only considering candidates less than fifty-eight years old. OUF No. 149; CROUF No. 149. Carreras responded that he was sixty years old. OUF No. 150; CROUF No. 150.

Silgan's Manufacturing Director, Dean LaClair, stated that he was looking for a candidate with "longevity" because the prior plant managers had left after only two years. CUF No. 85; SRCUF No. 85. He was the ultimate decision maker—that is, he was responsible for choosing the candidate who would fill the plant-manager position. CUF No. 93; SRCUF No. 93. In June 2018, he promoted an internal candidate, Kerry Maas, to the position. CUF No. 86; SRCUF No. 86. Maas had passed both stages of his pre-employment test. SUF No. 56; CRSUF No. 56. He had completed 128 credit hours of study and post-graduate studies at Colorado State University. CUF Nos. 88–89; SRCUF Nos. 88–89. And he is six years younger than Carreras. CUF No. 92; SRCUF No. 92. LaClair said that he did not choose to disqualify Carreras and does not know who did. CUF Nos. 98–99; SRCUF Nos. 98–99.

Margo Rice, Silgan's Human Resources Director, said that Silgan does not typically consider external candidates for plant-manager positions but when it does, a "review" score generally disqualifies them. CUF Nos. 102, 104, 109; SRCUF

Nos. 102, 104, 109. She said that Silgan declined Carreras because of his "review" score. CUF No. 110; SRCUF No. 110. And Whitter stated that once he approved Thiele's recommendation not to move forward with Carreras, he was no longer being considered for the job. CUF No. 122; SRCUF No. 122. Moreover, Thiele said that she only considers the pre-employment test score when she makes her recommendations, and she generally recommends declining candidates who receive a "review" score. CUF Nos. 129–130; SRCUF Nos. 129–130.

Carreras admits that he has no evidence that he provided his age to Silgan. SUF No. 61; CRSUF No. 61.

*B. AGE DISCRIMINATION IN EMPLOYMENT ACT*

The ADEA prohibits employers from "fail[ing] or refus[ing] to hire" an individual "because of [his] age." 29 U.S.C. § 623(a). It also prohibits employment agencies from "fail[ing] or refus[ing] to refer for employment, or otherwise . . . discriminat[ing] against, any individual because of such individual's age, or . . . classify[ing] or refer[ring] for

employment any individual on the basis of such individual's age." § 623(b). To prevail under the ADEA, the plaintiff must prove that "age was the 'but-for' cause" of the prohibited act. *Babb v. Wilkie*, 140 S. Ct. 1168, 1176 (2020) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). The plaintiff may do this through either direct evidence or circumstantial evidence. *Gross*, 557 U.S. at 177–78. At the summary-judgment stage, if the plaintiff shows direct evidence of discrimination, "the issue may be put to a finder of fact without further ado." *Zampierollo-Rheinfeldt*, 999 F.3d at 50 (quoting *Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17, 24 (1st Cir. 1998)). But if there is no direct evidence, we apply the *McDonnell Douglas* burden-shifting framework. *Id.* A threshold issue, therefore, is whether Carreras has provided direct evidence of discrimination.

**1. Direct Evidence**

Direct evidence of age-based discrimination is relatively rare. *Patten v. Wal-Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir. 2002). It is evidence which "directly reflect[s] the alleged

animus and bear[s] squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000). It "does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996). Nor does it include statements "that can plausibly be interpreted two different ways—one discriminatory and the other benign," for, under those circumstances, "that statement does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Patten*, 300 F.3d at 25 (quoting *Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 580–81 (1st Cir. 1999)).

Carreras asks us to deny summary judgment to Silgan and Okaya on the ground that he has presented direct evidence of discrimination.[6] He argues that Cox's emails on April 20th,

6. He also argues that we should deny them summary judgment because they "waived their right to summary judgment" by "fail[ing] to address" his direct evidence of discrimination. Docket No. 119, pg. 12. There are many reasons why this argument is meritless. But we think it suffices to

LeClair's statement that Silgan was looking for a candidate with "some longevity," and Okaya's text message asking for his age and date of birth are direct evidence of discrimination. We disagree.

Cox stated in two emails on April 20th that "Silgan has communicated in the past that they prefer candidates who are not close to retirement. . . . If it appears they are most likely more than 55–58 (plus or minus a couple of years) your time is likely better spent elsewhere," and "[w]e're not supposed to discriminate on age—but reality is—they're not going to hire any candidate who is 58+ years old." CUF Nos. 33, 36. The problem with the first part of Cox's statement is that Carreras has not told us who said it—that is, we do not know who at Silgan communicated to Cox that Silgan prefers candidates who are not close to retirement. Because we cannot be sure that a decisionmaker at Silgan said this, it is a

reject it on the ground that both Silgan and Okaya argued that there is no direct evidence. Docket No. 106, pg. 5; Docket No. 107, pgs. 9–11.

stray remark. *See Ayala-Gerena*, 95 F.3d at 96 ("[D]irect evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers . . . .").

Moreover, as Silgan argues, the first part of Cox's statement is hearsay. Docket No. 125-1, pg. 5. It is clear from Carreras's opposition to summary judgment that he is relying on the truth of Cox's statement that Silgan communicated to it that it prefers candidates who are not close to retirement. For he is relying on the statement to prove that Silgan, in fact, prefers candidates who are not close to retirement. Docket No. 119, pgs. 7–9. This first part of Cox's statement, therefore, cannot defeat summary judgment. *See Martínez v. Novo Nordisk Inc.*, 992 F.3d 12, 18 (1st Cir. 2021); *see also Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007) ("It is black-letter law that hearsay evidence cannot be considered on summary judgment.").

The problem with the second part of Cox's statement where she instructs Okaya to focus its search on younger candidates is that she is not the decisionmaker at Silgan, so it

cannot constitute direct evidence that Silgan discriminated against Carreras. *See Shorette v. Rite Aid*, 155 F.3d 8, 13 (1st Cir. 1998) (concluding that a statement from a nondecisionmaker was a stray remark and, thus, not probative of discriminatory animus where the plaintiff "adduced no evidence" that the nondecisionmaker "had authority to determine whether [the plaintiff] was to be retained by [his employer], nor that [the nondecisionmaker] played any role in the decision to demote [the plaintiff]"). To be sure, a nondecisionmaker's statement can be attributed to a decisionmaker if there is a "rational basis" to do so. *Mesnick v. Gen. Elec. Corp.*, 950 F.2d 816, 826 (1st Cir. 1991). But Carreras has not identified the person at Silgan who told TPI that Silgan prefers candidates who are not close to retirement, so we cannot attribute Cox's instructions to a decisionmaker. *See Medina-Muñoz*, 896 F.2d at 10 ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."). The second part of Cox's statement reflects age-based animus, but it cannot be

attributed to a decisionmaker at Silgan and, thus, is not direct evidence that Silgan discriminated against Carreras.

LaClair's statement that he wanted to hire someone with "some longevity," though he is the decisionmaker, is not direct evidence of discrimination, either. That is because the statement is inherently ambiguous. *See Zampierollo-Rheinfeldt*, 999 F.3d at 55 ("Statements that are 'inherently ambiguous' do not qualify as direct evidence. . . . A statement is inherently ambiguous if, viewed in context, it is subject to be interpreted in a benign, non-discriminatory way." (citations omitted)); *Patton*, 300 F.3d at 25 ("A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence."). LaClair stated, "We've had two plant managers since we opened that facility, and they both wanted to stay about two years. And we were looking maybe there was an opportunity for someone local to have some longevity where we're not replacing that position at a higher rate." CUF No. 85.

There is a nondiscriminatory (*i.e.*, benign) interpretation: Because the prior plant managers had left after only two years, Silgan wanted to fill that position with someone who was willing to stay for more than two years. To be sure, there is also a discriminatory interpretation, but where there is a benign interpretation as well, the statement does not "give us a 'high degree of assurance' that [the adverse-employment action] was attributable to discrimination." *Patten*, 300 F.3d at 25 (quoting *Fernandes*, 199 F.3d at 580). This statement, therefore, is not direct evidence of discrimination.

Carreras argues that, under *Zampierollo-Rheinfeldt*, LaClair's statement is direct evidence of discrimination. Docket No. 119, pg. 13. *Zampierollo-Rheinfeldt*, however, is distinguishable. There, the manager who terminated the plaintiff told him that he had terminated him because he wanted to "rejuvenate" the workforce, team, region, or management. *Zampierollo-Rheinfeldt*, 999 F.3d at 52. The First Circuit held that this statement is direct evidence of discrimination because the word "rejuvenation" is associated

with age and the decisionmaker made this statement upon direct inquiry about why he had made the adverse-employment decision. *Id.* at 55–56. So, in that context, a reasonable jury could conclude that the word "rejuvenation" "unambiguously suggests an age-based animus." *Id.* at 56. Here, in contrast, longevity is more associated with time than with age and its context does not suggest age-based animus.

First, while the definition of "rejuvenation" often includes the word "young" and, thus, is readily associated with age-based animus, *see id.* at 55–56, the definition of "longevity" often includes "long life" and "long time," which is more attenuated from age-based animus, *see, e.g.*, *Longevity*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/longevity (last visited Jan. 31, 2022) (defining longevity as "a long duration of individual life," "length of life," and "long continuance"); *Longevity*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/longevity (last visited Jan. 31, 2022) (defining longevity as "living for a long time" and "remaining popular

or useful for a long time"); *Longevity*, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/longevity (last visited Jan. 31, 2022) (defining longevity as "long life; great span of life" and "length of time spent in service, employment, etc."). That is because longevity is not necessarily age dependent. Consider, for example, one employee who is hired at age forty and retires at seventy-five and another employee who is hired at age thirty-five and retires at sixty-five. The first employee, though older, had greater longevity with his company than the second employee. Rejuvenation, in contrast, connotes youth and, thus, is readily associated with age-based animus against older employees.

Second, unlike in *Zampierollo-Rheinfeldt* where the decisionmaker made his "rejuvenation" statement when asked why he had taken adverse-employment action against the plaintiff, LaClair made his "longevity" statement when asked why Silgan had looked for external candidates to fill the plant-manager position. Docket No. 108-3, pg. 27. LaClair

noted that prior managers had held the position for only two years and agreed that, to him, longevity meant someone who could hold the position for more than two years. *Id.* at 28. We do not suggest that LaClair's "longevity" statement does not have a discriminatory interpretation—it does. But unlike in *Zampierollo-Rheinfeldt* where the "rejuvenation" statement's discriminatory interpretation was supported by the context in which it was made, here the "longevity" statement's benign interpretation is supported by the context in which it was made. No reasonable jury, therefore, could find that the "longevity" statement "unambiguously suggests an age-based animus." *Cf. Zampierollo-Rheinfeldt*, 999 F.3d at 56.

We turn now to Okaya's text message to Carreras. It said: "One more thing I want to ask, as client is considering people below 58 years old on this job so what is your age and dob, I'm sorry this is a weird question but I have to ask." CROUF No. 149. This statement suffers from now-familiar infirmities: Okaya is not Silgan's decisionmaker, and there is no rational basis to attribute its statement to Silgan. Okaya's statement to

Carreras, therefore, is not direct evidence that Silgan discriminated against him. *See Shorette*, 155 F.3d at 13; *Mesnick*, 950 F.2d at 826.

Carreras argues that this statement is nonetheless direct evidence that Okaya discriminated against him because Okaya may be liable for its own acts of discrimination. Docket No. 119, pg. 18. The crux of Okaya's motion for summary judgment is that it had no say in the adverse-employment action that Carreras complains of (*i.e.*, Silgan failing to hire him). And Carreras has produced no evidence to the contrary. Okaya's statement, therefore, is a stray remark. *See Ayala-Gerena*, 95 F.3d at 96. To be sure, the ADEA prohibits employment agencies from "fail[ing] or refus[ing] to refer for employment, or otherwise . . . discriminat[ing] against, any individual because of such individual's age, or . . . classify[ing] or refer[ring] for employment any individual on the basis of such individual's age." § 623(b). But Carreras has not directed the Court to any evidence that Okaya committed any of these prohibited acts. He, for example, has not

provided evidence that Okaya refused to refer him to Silgan because of his age. To the contrary, he alleged in his amended complaint that Okaya passed his information along to Silgan despite learning his age. Docket No. 58, pg. 9.[7] Evidence that Okaya asked for Carreras's age and date of birth, without any evidence that it committed a prohibited act, does not constitute direct evidence of discrimination. For asking someone's age, by itself, does not violate the ADEA. *See* 29 C.F.R. § 1625.5.

**2. *McDonnell Douglas* Framework**

Where, as here, there is no direct evidence of discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *Zampierollo-Rheinfeldt*, 999 F.3d at 50. At the first stage, Carreras bears the burden of establishing a prima-facie case of discrimination. *See id.* In the context of a failure-to-hire claim, he must prove that he: (1) is over forty

7. We later explain why we believe that Carreras has not adequately developed a claim, or proven, that Okaya violated § 623(b). *See infra* Section III.B.2.

years old, (2) was qualified for the position in question, (3) was rejected for it, and (4) after he was rejected, "the position remained open and the employer continued to seek applicants [with his] qualifications," *Wood v. Friction Materials*, 30 F.3d 255, 259 (1st Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)), or the employer did not "treat age neutrally," *Del Valle-Santana v. Servicios Legales de P.R., Inc*., 804 F.3d 127, 130 (1st Cir. 2015). If he establishes a prima-facie case of discrimination, the burden then shifts to Silgan and Okaya "to articulate a legitimate, nondiscriminatory reason" for their decision not to hire him. *See Cruz v. Bristol-Myers Squibb Co*., 699 F.3d 563, 571 (1st Cir. 2012). If they carry their burden, the burden shifts back to Carreras to "show, by a preponderance of the evidence, that the proffered reason for the adverse employment action was pretextual, and 'that age was the "but-for" cause of the employer's adverse action.'" *Zampierollo-Rheinfeldt*, 999 F.3d at 51 (quoting *Vélez v. Thermo King de P.R.*, 585 F.3d 441, 447–48 (1st Cir. 2009)).

We begin with Okaya's motion for summary judgment. Okaya argues that it is entitled to judgment as a matter of law because it had no say in the adverse-employment action that Carreras complains of (*i.e.*, the decision not to hire him). And, as Okaya notes, Carreras has not put forth any evidence that it did have a say. Docket No. 107, pg. 11; Docket No. 133, pg. 7. Because Carreras has not shown that Okaya was even capable of "fail[ing] or refus[ing] to hire" him "because of [his] age," § 623(a), Okaya is entitled to summary judgment on Carreras's failure-to-hire claim. *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) ("Once a properly supported motion has been presented, where a nonmovant bears the burden of proof on an issue, the nonmovant must point to competent evidence and specific facts to defeat summary judgment.").

To be sure, as Carreras observes, Okaya may be liable for its own acts of discrimination under § 623(b). Docket No. 119, pg. 18. But Carreras has not developed such a claim nor provided evidence supporting it. To survive summary judgment, Carreras must direct the Court to evidence in the

record showing that Okaya committed one of the prohibited acts in § 623(b)—that is, he must direct the Court to evidence that Okaya "fail[ed] or refuse[d] to refer [him] for employment, or otherwise . . . discriminat[ed] against" him because of his age or "classif[ied] or refer[red]" him for employment based on his age. § 623(b). Simply showing that Okaya asked for Carreras's age and date of birth, without arguing and providing evidence that it committed an act that § 623(b) prohibits, is insufficient to survive summary judgment. *Cf.* 29 C.F.R. § 1625.5 (stating that asking for someone's age, by itself, does not violate the ADEA). It is not the Court's job to entertain or develop arguments in support of a claim that is perfunctorily mentioned. *See Higgins v. New Balance Athletic Shoe*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); *Calvi v. Knox Cnty.*, 470 F.3d 422, 431 (1st Cir. 2006) ("[The plaintiff] was not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment.").

Silgan has moved for summary judgment on the ground that Carreras cannot establish two prongs of his prima-facie case: that he was qualified for the position and that it failed to treat age neutrally when it made its hiring decision. Docket No. 106, pgs. 7–8. We begin with the first prong. It is undisputed that Carreras is over forty years old. Now to the second prong: Silgan argues that Carreras cannot establish that he was qualified for the position because he failed his pre-employment test. Docket No. 106, pg. 6.[8]

Where an applicant failed to pass his pre-employment test, "[]he ordinarily cannot raise an inference that h[is] protected characteristic, rather than h[is] lack of qualifications, accounted for the employer's failure to hire or promote h[im]." *See Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 59 (1st Cir. 2018). That is the case here. For it is undisputed that Carreras did not pass the second phase of his pre-

8. Okaya also raises this argument. *See* Docket No. 107, pg. 6. Because we agree that his failure to pass his pre-employment test defeats his contention that he was qualified for the position, we would grant summary judgment to Okaya on this ground as well.

employment test. This case is similar to *Martínez-Burgos v. Guayama Corp.*, 656 F.3d 7 (1st Cir. 2011), where the First Circuit concluded that the fact that the plaintiff had "failed to achieve the minimum score for a 'fitting candidate' . . . by itself defeats her contention that she was qualified for the position." *Id.* at 13; *see also Goncalves v. Plymouth Cnty. Sheriff's Dep't*, 659 F.3d 101, 106 (1st Cir. 2011) (stating that the fact that the plaintiff received one of the lowest scores on her pre-employment tests "weighs against [her] assertion that she was qualified").

Carreras, however, contends that his test scores did not disqualify him because Silgan had discretion to move him forward in its application process notwithstanding his scores. Docket No. 119, pg. 15. This argument misses the point. It does not matter that Silgan could have ignored its usual practice of declining candidates who failed their pre-employment test. *Cf. Goncalves*, 659 F.3d at 106 (agreeing that it was confusing why an employer let the plaintiff proceed through the selection process when she was not qualified but

stating that it is not the court's role to second-guess the employer's business decisions). What matters is that Carreras failed his pre-employment test, which defeats his contention that he was qualified for the position. *Martínez-Burgos*, 656 F.3d at 13; *see also Goncalves*, 659 F.3d at 106.

As to the third prong, it is undisputed that Silgan rejected Carreras for its plant-manager position. We turn finally to the fourth prong: whether Silgan filled the position with someone similarly qualified or failed to treat age neutrally. Silgan argues that Carreras has failed to establish this prong because the candidate it chose for its plant-manager position, Kerry Maas, passed his pre-employment test[9] and there is no evidence in the record that shows that it knew Carreras's age when it declined to hire him. In comparing Carreras to Maas, we must decide "'whether a prudent person, looking objectively' at the plaintiff and h[is] comparator 'would think

9. Okaya raises this argument as well. Docket No. 107, pg. 7. Had we not already granted it summary judgment on Carreras's ADEA claim, we would have granted it summary judgment on the ground that Carreras failed to prove the fourth prong of his prima-facie case.

them roughly equivalent,' and similarly qualified for the position." *Caraballo-Caraballo*, 892 F.3d at 60 (quoting *Vélez*, 585 F.3d at 451). They must be similar in "material respects." *Goncalves*, 659 F.3d at 106. Carreras and Maas are not similarly qualified. It is undisputed that Maas passed his pre-employment test and Carreras did not. This fact "undermin[es] any claim that [Carreras] was passed over in favor of a similarly qualified individual." *Martínez-Burgos*, 656 F.3d at 13.

Carreras argues that he has nonetheless established the fourth prong of his prima-facie case because LaClair's "longevity" statement and TPI's emails stating that Silgan said that it prefers candidates who are not close to retirement prove that Silgan failed to treat age neutrally. A lack of age-neutrality "may be manifested either by a facially discriminatory policy or by a policy which, though age-neutral on its face, has the effect of discriminating against older persons." *Del Valle-Santana*, 804 F.3d at 131 n.3 (quoting *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 27 (1st Cir. 1998)).

But, as we discussed, LaClair's "longevity" statement is not facially discriminatory because it has a benign interpretation, which is supported by the statement's context. And, again, we cannot consider TPI's statement that Silgan said that it prefers candidates who are not close to retirement because Carreras is offering this statement for its truth—that is, he is offering it to show that Silgan prefers candidates who are not close to retirement. So, it is hearsay. Without any admissible evidence that Silgan had a facially discriminatory policy or an age-neutral policy with the effect of excluding older candidates, Carreras cannot prove that Silgan failed to treat age neutrally. *Cf. Brennan*, 150 F.3d at 28 (finding that the fourth prong was satisfied where the plaintiff provided raw data indicating that the defendant preferred younger employees).

Moreover, there is a fatal problem with Carreras's claim that Silgan failed to hire him because of his age: Carreras has admitted that he has no evidence that he ever disclosed his age to Silgan. CRSUF No. 61. "A defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from

circumstances unknown to the defendant." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005). Thus, if a plaintiff argues that the defendant discriminated against him because of his age, and the "defendant asserts that the record fails to indicate the requisite awareness [of his age], a plaintiff must adduce some evidence, whether direct or indirect, indicating [the] defendant's knowledge." *See id.* Silgan argues that it did not know Carreras's age when it chose not to hire him. Docket No. 106, pg. 8. Carreras, therefore, must adduce evidence showing that Silgan knew his age when it made this decision. *See Woodman*, 411 F.3d at 82. But he has conceded that he has no evidence that he disclosed his age to Silgan and has provided no evidence that Silgan knew his age when it chose not to hire him. Without knowing his age, Silgan could not have discriminated against him because of it. *Cf. Raytheon Co. v. Hernández*, 540 U.S. 44, 54 n.7 (2003) ("If [the employer] were truly unaware that such a disability existed, it would be impossible for her hiring decision to have been based, even in part, on [the employee's] disability."); *Robinson v. Adams*, 847

F.2d 1315, 1316 (9th Cir. 1987) ("But the *McDonnell Douglas* elements would not rationally create this inference [of discrimination] if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact."); *see generally Geraci v. Moody-Tottup, Int'l*, 82 F.3d 578, 581 (3d Cir. 1996) ("[C]ourts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic."). Because Carreras has not proved that Silgan knew his age, he cannot create the inference that it failed to treat age neutrally when it chose not to hire him. He, thus, has not established the fourth prong of his prima-facie case.

We end our analysis here. For Carreras has failed to establish his prima-facie case and, therefore, no inference of discrimination has arisen. *See Goncalves*, 659 F.3d at 107. We grant summary judgment to Silgan on Carreras's failure-to-hire claim under the ADEA.

C. *PUERTO RICO LAW 100*

Like the ADEA, Puerto Rico Law 100 provides a cause of action for victims of age-based discrimination. *Zampierollo-Rheinfeldt*, 999 F.3d at 58. And its protections are coterminous with the ADEA's. *Id.* (quoting *Martínez*, 992 F.3d at 16). Though the plaintiff's burden is lighter under Law 100, the plaintiff still must establish a prima-facie case to shift the burden of production and persuasion to the defendant. *See Vélez*, 585 F.3d at 452 n.7. Because Carreras has failed to establish his prima-facie case under the ADEA, he has also failed to establish his prima-facie case under Law 100. We, therefore, grant summary judgment to Silgan and Okaya on Carreras's Law 100 claim as well.

**IV. NEGLIGENCE CLAIMS**

Silgan's and Okaya's negligence claims are the only ones that remain. We, however, decline to exercise supplemental jurisdiction over them.

The decision to exercise supplemental jurisdiction is discretionary, and the proper inquiry is "pragmatic and case-

specific," taking into account "concerns of comity, judicial economy, convenience, fairness, and the like." *Senra v. Town of Smithfield*, 715 F.3d 34, 41 (1st Cir. 2013). Though this case has been pending for over two years, discovery is complete, and there is factual overlap between Carreras's ADEA claim and Silgan's and Okaya's negligence claims, there is not enough factual and substantive overlap for it to be efficient for us to adjudicate them. For while our ADEA analysis applied federal anti-discrimination law and looked to facts in the record related to age-based discrimination (as did our Law 100 analysis, which is why we exercised supplemental jurisdiction over that claim), the negligence claims require us to apply a different body of law to a different body of facts. And, as to Silgan's and Okaya's third-party negligence claims against TPI, all claims in the underlying action have been dismissed. *See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 806 (6th Cir. 2008) (affirming dismissal of third-party claims after the underlying action had been settled).

We, therefore, dismiss without prejudice Silgan's and Okaya's negligence claims. *See Santana-Vargas v. Banco Santander P.R.*, 948 F.3d 57, 62 (1st Cir. 2020) (affirming the district court's decision to decline to exercise supplemental jurisdiction where the case had been pending for three years and there was substantive overlap between the federal and non-federal claims).

## V. CONCLUSION

The Court **GRANTS** summary judgment to Silgan and Okaya on Carreras's ADEA and Law 100 claims; **DISMISSES with prejudice** Carreras's claims against TPI pursuant to their stipulation; **DISMISSES without prejudice** Silgan's and Okaya's indemnity and contribution claims against TPI and TPI's indemnity, contribution, and negligence claims against them because they are moot; **DISMISSES without prejudice** Silgan's and Okaya's negligence claims because we decline to exercise supplemental jurisdiction over them; and **DISMISSES without prejudice** Silgan's and Okaya's indemnity and contribution claims against each other because

we have granted them summary judgment and, thus, those claims are moot.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 4th day of February 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE